IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO INC., *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, *et al.*<br><br>Defendants. | Civil Action No. 18-cv-03066-CJN |

## **DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 245 FBI employees, supported by approximately 74 contractors, who staff a total of twelve (12) FBI Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to

1

FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiffs' request for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of Plaintiffs' FOIA request for records related to videos of ballistics tests conducted with ammunition fired into gelatin.

(4) In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration is submitted in support of Defendant's motion for Summary Judgment and includes the following: a brief administrative history of Plaintiffs' FOIA request; the procedures used to search for, review, and process responsive records; and the FBI's justification for withholding records in full pursuant to FOIA Exemptions 7(E) and 7(F).

## ADMINISTRATIVE HISTORY OF PLAINTIFFS' REQUEST

(5) By e-FOIA[1] dated April 19, 2018, Plaintiffs submitted a FOIA request to the FBI seeking:

> [V]ideo recordings of ballistics tests conducted with common handgun and rifle ammunition, fired into ballistics gelatin...video of common ammunition in multiple

---

[1] An e-FOIA is an electronic means by which requesters can submit FOIA requests to the FBI, online, through the FBI's public website, www.FBI.gov.

calibers and cartridges including but not limited to: .9 mm full metal jacket, .9 mm expanding, .22 full metal jacket, and .223 full metal jacket.

Plaintiffs also stated they did not seek identifying information regarding specific FBI cases or investigations. Plaintiffs also requested a waiver of duplication fees, but indicated they were willing to pay reasonable duplication fees in the event the fee waiver was denied. *See* **Exhibit A**.

(6) By letter dated May 1, 2018, the FBI acknowledged receipt of Plaintiffs' request and assigned it FOIPA Request Number 1403613-000. The FBI advised Plaintiffs their request for fee waiver was being considered and they would be advised of the decision at a later date. The FBI also advised Plaintiffs for purposes of assessing fees, it determined Plaintiffs were: an educational institution, noncommercial scientific institution or a representative of the new media. Therefore, Plaintiffs would be charged for only applicable duplication fees if their fee waiver was denied. Moreover, the FBI informed Plaintiffs they could appeal the FBI's determination by writing to the U.S. Department of Justice ("DOJ"), Office of Information Policy ("OIP"), within ninety (90) days from the date of its letter; contact the FBI's FOIA public liaison; and or seek dispute resolution services by contacting the Office of Government Information Services ("OGIS"). *See* **Exhibit B**.

(7) By letter dated May 22, 2018, the FBI advised Plaintiffs it was withholding material responsive to Plaintiffs' request in full pursuant to FOIA Exemption 7(E), 5 U.S.C. § (b)(7)(E). The FBI also advised Plaintiffs they could appeal the FBI's determination by writing to the DOJ OIP, within ninety (90) days from the date of its letter; contact the FBI's FOIA public liaison; and or seek dispute resolution services by contacting the Office of Government Information Services ("OGIS"). *See* **Exhibit C**.

(8) By letter dated August 14, 2018, sent via email, Plaintiffs submitted an appeal to DOJ OIP contesting the FBI's May 22, 2018 response to Plaintiffs' FOIA request. Plaintiffs' appeal averred the FBI had not met its burden to invoke Exemption 7(E) to withhold the responsive records. *See* **Exhibit D**.

(9) By letter dated August 15, 2018, OIP acknowledged receipt of Plaintiffs' appeal and assigned it appeal number AP-2018-007610. *See* **Exhibit E**.

(10) By letter dated September 28, 2018, OIP affirmed the FBI's response stating it properly withheld the requested information in full under FOIA Exemption (b)(7)(E). OIP also advised Plaintiffs of their right to mediation services through the OGIS. *See* **Exhibit F**.

(11) On December 21, 2018, Plaintiffs initiated this instant action. *See* Docket Number 1.

(12) By email dated March 18, 2019, from Plaintiffs' counsel to the Assistant United States Attorney ("AUSA") representing Defendant, Plaintiffs provided additional information to assist the FBI in its search for responsive records. Plaintiffs' counsel stated Plaintiffs included "but not limited to" language in their request to ensure the FBI searched for responsive records for "equivalent bullets, which may be labelled or categorized using the international system or other classifications". Plaintiffs provided the below chart indicating the equivalent bullet classifications encompassed in their FOIA request:

| Specified bullet | Equivalent bullets |
|---|---|
| 9mm full metal jacket | .38 caliber full metal jacket |
| 9mm expanding round | .38 caliber expanding round |
| .22 full metal jacket | 5.56x15mm full metal jacket, .22LR |
| .223 full metal jacket | 5.56mmx45mm full metal jacket (e.g. NATO round) |

(13)  By letter dated June 10, 2019, the FBI advised Plaintiffs the FBI located 97 videos responsive to Plaintiffs' request. In addition, the FBI advised Plaintiffs the FBI withheld this material pursuant to (b)(7)(E), and (b)(7)(F). Additionally, the FBI advised Plaintiffs they could direct any further inquiries about this case to the Attorney representing the Government in this matter. *See* **Exhibit G.**

## THE FBI'S SEARCH FOR RESPONSIVE RECORDS

(14)  RIDS determined responsive videos would likely be in the possession of two (2) FBI Divisions – 1) Laboratory Division ("LD"), and 2) Training Division ("TD"). RIDS provided a copy of Plaintiffs' request and the subsequent chart provided by Plaintiff's counsel (*See* ¶ 12 *supra*) to facilitate the search. RIDS requested the Laboratory Division's Firearms/Toolmarks Unit ("FTU")[2] conduct a search of records in its possession for any responsive videos. The FTU responded it does not maintain any videos responsive to Plaintiffs' request. RIDS also requested the Training Division's Defensive Systems Unit's ("DSU")[3] Ballistic Research Facility ("BRF") conduct a search of records in its possession for any responsive videos. BRF subsequently conducted an electronic search of its video collection for responsive videos. They further narrowed the results to any videos related to ballistics testing in

---

[2] The mission of the Firearms/Toolmarks Unit ("FTU") of the FBI Laboratory is to apply valid scientific procedures to the forensic examinations of firearms, ammunition components, toolmarks, serial number restoration, gunshot residue, bullet trajectories, and other closely-related physical evidence in support of the FBI and other law enforcement agencies, and to provide leadership to the forensic Firearm and Toolmark community through training and research.

[3] The mission of the Defensive Systems Unit is to provide research, logistic and operational support to all entities within the FBI, as well as to trusted USIC ["United States Intelligence Community"] and law enforcement partners. Specifically, DSU is accountable for life cycle management of the FBI's ammunition, ballistic protective equipment and weapons systems, from procurement to final disposition. Additionally, DSU prioritizes and manages range acquisition and development.

gelatin and manually scoped those results down to videos per caliber type. Through this search, the BRF located 97 videos responsive to Plaintiffs' request. RIDS also confirmed with FTU and BRF there were no other locations where responsive FBI videos of this nature would likely be located. As such, RIDS, through the assistance of FTU and BRF, conducted a search reasonably calculated to locate all responsive records.

(15) RIDS reviewed the responsive videos and determined the videos are exempt from disclosure pursuant to FOIA Exemptions (b)(7)(E) and (b)(7)(F). The release of these videos would disclose techniques and/or procedures for law enforcement investigations and could reasonably be expected to risk circumvention of the law. In addition, the release of these videos could reasonably be expected to endanger the life or physical safety of individuals.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA
## EXEMPTION 7 THRESHHOLD

(16) Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purposes.

(17) The pertinent records were compiled and/or created in furtherance of the FBI's law enforcement mission. To accomplish this mission, inherent tasks and operational functions are required, to include the identification of, development, and implementation of law enforcement and intelligence gathering methods, techniques, procedures, and guidelines. Specifically, the records responsive to Plaintiffs' request were created as a result of testing of different types of ammunition fired into various forms of gelatin. The derivative information gleaned from this research and testing is vital to the law enforcement and intelligence communities to assist in determining ammunition procurement and providing law enforcement training. Therefore, these records were created for a law enforcement purpose allowing for the application of Exemption (b)(7).

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(18) 5 U.S.C. § 552(b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

(19) Exemption (b)(7)(E) has been asserted to withhold records, the release of which would disclose techniques for law enforcement investigations or prosecutions that could reasonably be expected to risk circumvention of the law. Specifically, the FBI withheld videos of different ammunition being fired into gelatin. The responsive videos are part of the important testing and research conducted by the FBI for law enforcement training and ammunition procurement. The disclosure of these videos would inform criminals how the FBI investigates the use of different types of ammunition in the commission of real-world criminal acts; and also how the FBI determines which types of ammunition are most effective for specific law

enforcement applications. Revelation of this information would provide criminals with an understanding of which types of ammunition they should use to inhibit FBI efforts to investigate their criminal acts involving the use of firearms. It would also allow them to predict the use of specific types of ammunition in particular law enforcement applications, and inform them how best they should prepare for an armed confrontation with law enforcement. Furthermore, the FBI determined release of these videos would reveal the performance capabilities of specific types of ammunition and their ability to wound individuals. Public release of this information would enable criminals to discern which types of ammunition they should use in commission of different crimes and how they could more effectively cause harm to other individuals. Accordingly, as release of this information would enable criminals to circumvent FBI law enforcement and enable them to more effectively commit crimes involving firearms, the FBI properly protected this information from disclosure pursuant to FOIA Exemption 7(E).

## **EXEMPTION 7(F)**
## **ENDANGERMENT OF THE LIFE OR PHYSICAL SAFETY OF ANY INDIVIDUAL**

(20)   5 U.S.C. § 552 (b)(7)(F) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to endanger the life or physical safety of any individual."

(21)   Exemption (b)(7)(F) has been asserted in conjunction with (b)(7)(E) to protect against the release of information regarding the effectiveness of the use of different types of ammunition. Release of the ballistics testing videos at issue would inform criminals as to the ability of different types of ammunition to harm individuals. Considering release of this information would enable criminals to make informed decisions on how best to injure others through the use of specific types of ammunition, the FBI determined release of these videos

could reasonably be expected to endanger the lives and safety of individuals. Thus, the FBI also withheld this information pursuant to Exemption 7(F).

## CONCLUSION

(22)	The FBI conducted a reasonable search for responsive records. The FBI identified 97 responsive videos within its possession responsive to Plaintiff's request. The FBI withheld these videos in full pursuant to FOIA Exemptions (b)(7)(E) and (b)(7)(F), 5 U.S.C. § 552(b)(7)(E) and (b)(7)(F) as releasing any of this information would disclose techniques and procedures for law enforcement investigations and/or would reasonably be expected to endanger the life or physical safety of individuals. The FBI is unable to reasonably segregate any of this information for release as these videos consist wholly of ballistics testing, information that would allow criminals to determine how best to circumvent the FBI's use of specific ammunition in law enforcement applications; how the FBI investigates the use of particular types of ammunition; and the performance capabilities of certain types of ammunition and their ability to wound individuals. As such, further segregation would risk harms protected by Exemption (b)(7)(E) and (b)(7)(F). In addition, at **Exhibit H**, the FBI is including a *Vaughn* index describing the nature of the records withheld.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through H attached hereto are true and correct copies.

Executed this 16th day of October, 2019.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia