IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL PUBLIC RADIO, INC.,** *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03066-CJN |
| | ) | |
| **FEDERAL BUREAU OF INVESTIGATION**, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7, Plaintiffs National Public Radio, Inc. and Rebecca Hersher (collectively, "NPR"), by and through their attorneys, hereby move for summary judgment with respect to the FBI's continued withholding of records responsive to NPR's April 19, 2018 Freedom of Information Act ("FOIA") request for generic video recordings of ballistics tests conducted with common handgun and rifle ammunitions.

NPR respectfully refers the Court to the accompanying memorandum of points and authorities in support of this motion, statement of material facts, the declaration of Lisa B. Zycherman, and all exhibits thereto. A proposed order is also attached for the Court's consideration.

WHEREFORE, Plaintiffs respectfully request that the Court grant their motion for summary judgment and order the FBI to immediately and fully process NPR's April 19, 2018 FOIA request and disclose all non-exempt records to NPR immediately.

Dated:  October 16, 2019

Respectfully submitted,

_____/s/ *Lisa B. Zycherman*_____

Lisa B. Zycherman (D.C. Bar No. 495277)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
202-973-4280

Thomas R. Burke (appearing *pro hac vice*)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
San Francisco, CA 94111
415-276-6500

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL PUBLIC RADIO, INC.,** *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03066-CJN |
| | ) | |
| **FEDERAL BUREAU OF INVESTIGATION**, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Lisa B. Zycherman (D.C. Bar No. 495277)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
202-973-4280

Thomas R. Burke (appearing *pro hac vice*)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
San Francisco, CA 94111
415-276-6500

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND ................................................................................................2

    A.   NPR's Public Interest Reporting on Bullet Lethality ............................2

    B.   NPR's FOIA Request For the FBI's Generic Ballistics Test Videos .....................3

    C.   NPR's FOIA Action to Challenge the FBI's Withholding of All Generic Ballistics Test Videos ....................................................4

    D.   The FBI's *Vaughn* Index ................................................................5

III. ARGUMENT ................................................................................................6

    A.   FOIA Establishes a Presumption of Disclosure and Requires the FBI to Make a Detailed and Specific Showing that Each Responsive Agency Record Is Properly Exempt from Disclosure ..............................................6

    B.   The FBI Cannot Withhold Generic Ballistics Test Videos Under Exemption 7(E) ................................................................................7

        1.   FOIA Exemption 7(E) Requirements ....................................7

        2.   Exemption 7(E) Does Not Apply to Generic Ballistics Test Videos Because They Are Well-Known to the Public ............................8

    C.   The FBI Cannot Withhold Generic Ballistics Test Videos Under Exemption 7(F) ................................................................................12

        1.   FOIA Exemption 7(F) Requirements....................................12

        2.   FOIA Exemption 7(F) Does Not Apply Here Because the FBI's Assertion Is Merely Conclusory and Speculative ....................13

    D.   The FBI's *Vaughn* Index Fails to Provide a Justification for Withholding Each of the 97 Ballistics Test Videos ................................................16

IV.  CONCLUSION ................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU v. Department of Defense,*
    543 F.3d 59 (2d Cir. 2008), *vacated on other grounds*, 558 U.S. 1042 (2009) ........................ 12, 13, 14

*Albuquerque Publ'g Co. v. Dep't of Justice,*
    726 F. Supp. 851 (D.D.C. 1989) ................................................................................................ 11, 13

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.,*
    950 F. Supp. 2d 221 (D.D.C. 2013) ................................................................................................. 8

*Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.,*
    852 F. Supp. 2d 66 (D.D.C. 2012) ................................................................................................. 15

*Anderson v. Fed. Bureau of Prisons,*
    2018 WL 6573282 (D.D.C. Dec. 13, 2018) .................................................................................. 14

*Antonelli v. Fed. Bureau of Prisons,*
    623 F. Supp. 2d 55 (D.D.C. 2009) ................................................................................................. 13

*Birch v. U.S. Postal Serv.,*
    803 F.2d 1206 (D.C. Cir. 1986) ..................................................................................................... 16

*Blackwell v. FBI,*
    646 F.3d 37 (D.C. Cir. 2011) ........................................................................................................... 7

*Boehm v. FBI,*
    2013 WL 2477091 (D.D.C. June 10, 2013) .................................................................................. 12

*Brown v. F.B.I.,*
    873 F. Supp. 2d 388 (D.D.C. 2012) ............................................................................................... 16

*Campbell v. Dep't of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ......................................................................................................... 13

*Cottone v. Reno,*
    193 F.3d 550 (D.C. Cir. 1999) ....................................................................................................... 15

*Creech v. Frauenheim,*
    800 F.3d 1000 (9th Cir. 2015) ....................................................................................................... 10

*Creech v. Trimble,*
    2013 WL 3491310, at *3 (N.D. Cal. July 11, 2013) .................................................................... 10

*Dep't of Air Force v. Rose,*
    425 U.S. 352 (1976) ......................................................................................................................... 6

*Dep't of Justice v. Reporters Comm. for Freedom of Press,*
    489 U.S. 749 (1989) ........................................................................................ 6

*Dep't of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) ........................................................................................ 6

*Dorsey v. Exec. Office for U.S. Att'ys,*
    2018 WL 4762256 (D.D.C. Oct. 2, 2018) ..................................................... 14

*Elec. Privacy Info. Ctr. v. DHS,*
    777 F.3d 518 (D.C. Cir. 2015) ................................................................ 13, 14

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978) ................................................................ 16, 17

*Harrison v. Exec. Office for U.S. Att'ys,*
    377 F. Supp. 2d 141 (D.D.C. 2005) ............................................................... 6

*Henderson v. Office of Dir. of Nat'l Intelligence,*
    151 F. Supp. 3d 170 (D.D.C. 2016) ............................................................... 8

*Higgs v. U.S. Park Police,*
    2018 WL 3109600 (S.D. Ind. June 25, 2018),
    *aff'd in relevant part,* 933 F.3d 897 (7th Cir. 2019) ..................................... 9

*Jaffe v. CIA,*
    573 F. Supp. 377 (D.D.C. 1983) .................................................................... 7

*Leopold v. Dep't of Justice,*
    301 F. Supp. 3d 13 (D.D.C. 2018) ................................................................. 9

*Linn v. Dep't of Justice,*
    1995 WL 631847 (D.D.C. Aug. 22, 1995) .................................................... 13

*Long v. Dep't of Justice,*
    450 F. Supp. 2d 42, *order amended on reconsideration,*
    457 F. Supp. 2d 30 (D.D.C. 2006), *amended,* 479 F. Supp. 2d 23 (D.D.C. 2007) ....................... 12, 14

*Mead Data Cent., Inc. v. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) .................................................................. 5, 16

*Myrick v. Johnson,*
    199 F. Supp. 3d 120 (D.D.C. 2016) ........................................................... 7, 9

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.,*
    849 F. Supp. 2d 13 (D.D.C. 2012) ................................................................ 9

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ........................................................................................ 6

*Public Emps. for Envtl. Responsibility v. U.S. Section, Inter'l Boundary & Water Comm.,
      U.S.-Mexico*,
      740 F.3d 195 (D.C. Cir. 2014)...........................................................................................14

*Roth v. Dep't of Justice*,
      642 F.3d 1161 (D.C. Cir. 2011).........................................................................................6

*Smith v. Bureau of Alcohol, Tobacco & Firearms*,
      977 F. Supp. 496 (D.D.C. 1997).........................................................................................7

*Strunk v. U.S. Dep't of State*,
      845 F. Supp. 2d 38 (D.D.C. 2012).......................................................................................7

*United States v. Slatten*,
      No. CR 14-107, --- F. Supp. 3d ---, 2019 WL 3431438 (D.D.C. July 30, 2019) ................10

*Vaughn v. Rosen*,
      484 F.2d 820 (D.C. Cir. 1973)........................................................................5, 9, 11, 13, 16

**State Cases**

*People v. Raucci*,
      968 N.Y.S.2d 211 (3d Dep't 2013) ...................................................................................10

**Federal Statutes**

5 U.S.C. § 552(a)(4)(B) ................................................................................................................6

5 U.S.C. § 552(b)(7)(E) ............................................................................................................7, 8

5 U.S.C. § 552(b)(7)(F)...............................................................................................................12

**Other Authorities**

S. Rep. No. 93-1200 (1974) (Conf. Rep.),
      *as reprinted in* 1974 U.S.C.C.A.N. 6285 .........................................................................8

## I.      INTRODUCTION

In this Freedom of Information Act ("FOIA") suit, plaintiffs National Public Radio, Inc. and Rebecca Hersher, a reporter on its Science Desk (collectively, "NPR") seek FBI records documenting the destructiveness and lethality of different types of gun ammunition.  While doing further reporting for stories on why some bullets are more destructive and lethal than others and why surgeons say bullets are getting more lethal, Ms. Hersher investigated the FBI's work in this area.  She sought copies of videos of generic high-speed ballistics tests for common ammunition that the FBI produces and routinely makes available in court proceedings across the nation.  NPR submitted a FOIA request to the FBI to obtain generic "video recordings of ballistics tests conducted with common handgun and rifle ammunitions," in April 2018.  The agency summarily denied the request, as well as the administrative appeal.

Only after this litigation was filed did the FBI finally conduct a search for responsive records—11 months *after* NPR submitted the request and 10 months *after* the FBI claimed that all responsive records were exempted from disclosure.  Through this action, the FBI confirmed that 97 responsive videos exist that the agency is withholding entirely pursuant to Exemptions 7(E) and 7(F).  Despite the manifest public importance of the information about the destructiveness and lethality of gun ammunition—when over 100,000 Americans are shot every year—the government has improperly withheld critical information from the public by asserting FOIA exemptions that Congress expressly advised do not apply to these records.

*First*, the Government's reliance  on Exemption 7(E) is entirely misplaced because, among other reasons, it is well-settled law that Exemption 7(E) does not cover routine techniques and procedures already well known to the public and, on that basis, the Conference Report for the 1974 amendment to FOIA that added the exemption ***expressly excludes*** "ballistics tests" from its ambit.

*Second*, the FBI's more recent reliance on Exemption 7(F) is similarly unavailing because the agency has provided no nexus between disclosure of the ballistics videos and any possible harm to individuals that could result from such disclosure.  Indeed, the Government is estopped from asserting that the videos are secret when it routinely discloses these types of videos to secure convictions.  This reality also shows that these generic videos do not reflect obscure or secret techniques or procedures or information that would endanger the life or safety of any individuals.

*Finally*, the FBI has attempted to justify its extensive withholdings with only conclusory, boilerplate explanations.  Under settled law, this is not sufficient.  Before records can be withheld under the FOIA, agencies must explain the nature and content of the records with reasonable specificity as well as the basis for withholding.  This the government has not done.

For these reasons, the Court should grant NPR's motion for summary judgment and order the government to disclose withheld information related to the FBI's ballistics test videos immediately.

## II.      BACKGROUND

### A.      NPR's Public Interest Reporting on Bullet Lethality

NPR has reported a number of stories addressing the damage done by bullets, and how doctors do not know why, exactly, bullet wounds have gotten more lethal.  For example, in 2015, NPR reported on a study of gunshot wound patients in Newark, New Jersey, finding that gunshot wounds have become more lethal and that more patients have had multiple wounds, but that there is a lack of data sharing between, for example, health and law enforcement to explain the increase and severity of gunshot wounds.  Pls.' Statement of Material Facts ("SMF") ¶ 1.  In 2017, NPR reported on the damage done by bullets during a mass shooting in Las Vegas, Nevada.  *Id.* ¶ 2.  And last year NPR published a video investigating the science behind why some bullets are more destructive than others.  *Id.* ¶ 3.  To further investigate this story, NPR reporter Rebecca Hersher

reviewed ballistics research and sought from the FBI generic high-speed ballistics test videos for common ammunition that the agency produces and makes available in criminal trials to secure prosecutions.

### B.    NPR's FOIA Request For the FBI's Generic Ballistics Test Videos

On April 19, 2018, NPR submitted a FOIA request to the FBI seeking

> video recordings of ballistics tests conducted with common handgun and rifle ammunition, fired into ballistics gelatin, … video of common ammunition in multiple calibers and cartridges including but not limited to:  .9mm full metal jacket, .9mm expanding, .22 full metal jacket, and .223 full metal jacket.

SMF ¶ 4.  NPR sought production of the recordings "in digital form as AVI, FLV, MP4, MOV or another widely used filetype."  *Id*.  **NPR did not seek identifying information regarding specific FBI cases or investigations.**  Instead, NPR plainly sought only **generic** video recordings of ballistics tests not connected to any particular criminal investigation or prosecution.[1]

The FBI responded to NPR's FOIA request on May 22, 2018, stating that "[m]aterial responsive to your request is being withheld in full" under FOIA exemption 7(E), "and your request is being closed."  SMF ¶ 6.  NPR filed an administrative appeal of the FBI's denial on August 14, 2018, arguing that the FBI's Exemption 7(E) claim was conclusory and insufficient, and that that Exemption 7(E) does not apply to routine techniques and procedures already well known to the public, such as the ballistics tests sought in NPR's request.  SMF ¶ 7.  In particular, NPR pointed out that the Conference Report for the 1974 amendments to FOIA that added Exemption 7(E) specifically excluded "ballistics tests" from the scope of the exemption because they are routine and already well-known to the public.  *Id.*

---

[1] NPR asked the FBI to waive any applicable fees "because the information as used by National Public Radio is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id*. ¶ 5.

On September 28, 2018, the FBI summarily denied NPR's administrative appeal, again relying only on Exemption 7(E) to conclude "it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision," because it would "disclose techniques and procedures or guidelines for law enforcement investigations or prosecution." *Id.* ¶ 8.

**C.     NPR's FOIA Action to Challenge the FBI's Withholding of All Generic Ballistics Test Videos**

NPR filed the instant action on December 12, 2018, seeking to enjoin the government from continuing to improperly withhold records responsive to its FOIA request.  ECF No. 1.  NPR amended its complaint to add the U.S. Department of Justice as a defendant on March 4, 2019. ECF No. 10.

On March 18, 2019 the government informed NPR that it required clarification regarding the caliber of ammunition sought by NPR's request so that it could conduct a search for responsive records.  ECF No. 14.  NPR provided that information and only at that point, 11 months after NPR submitted its FOIA request and 10 months after the FBI claimed that all responsive records were exempted from disclosure, did the agency begin "manually searching for potentially responsive records." *Id.*

The FBI has now completed the process of manually searching for potentially responsive records and has located 97 responsive video recordings.  On June 10, 2018, the FBI notified NPR that these videos include:  "76 videos showing testing of .223 Remington/5.56 mm NATO ammunition fired into ballistic gelatin; and 21 videos with 9 mm Luger ammunition fired into ballistic gelatin."  SMF ¶ 12.  The FBI further informed NPR that it was withholding these video records pursuant to FOIA Exemption 7(E), and for the first time additionally cited Exemption 7(F). *Id.*

4

D.        The FBI's *Vaughn* Index

In *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973), the D.C. Circuit established the "procedural requirements" that "an agency seeking to avoid disclosure" must follow in order to carry its burden.  *Vaughn* requires that "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).  The *Vaughn* requirements are typically satisfied through an agency's submission of an affidavit describing the basis for its withholdings, and providing justifications for redactions, accompanied by an index listing responsive records and indicating the precise redactions made to the records.

On August 15, 2019, the Government produced a *Vaughn* Index to NPR only listing the two types of responsive video recordings and setting forth the two FOIA exemptions invoked to withhold the recordings in full.  SMF ¶ 13.  On NPR's objection that the FBI's initial *Vaughn* Index was insufficient, the agency produced a second *Vaughn* Index on August 16, 2019, which was not in the form of an affidavit and simply added two paragraphs stating the grounds for the agency's reliance on FOIA Exemptions 7(E) and 7(F).  *Id.* ¶ 15.  The FBI's second *Vaughn* Index merely refers to the two types of video recordings categorically and provides a general statement regarding the application of the two FOIA exemptions.  *Id.*  The *Vaughn* Index repeats the language of the FOIA exemptions and cites non-specific concerns that "release of this information would enable criminals to circumvent the law," and "could reasonably be expected to endanger the lives and safety of individuals."  *Id.*  In this manner, the FBI's *Vaughn* Index fails to explain how the cited FOIA exemptions apply to each of the 97 videos individually as the law requires.

### III.    ARGUMENT

**A.    FOIA Establishes a Presumption of Disclosure and Requires the FBI to Make a Detailed and Specific Showing that Each Responsive Agency Record Is Properly Exempt from Disclosure**

The Freedom of Information Act safeguards American citizens' right to know "what their government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). FOIA's exemptions have thus "been consistently given a narrow compass," and requested agency records that "do not fall within one of the exemptions are 'improperly' withheld." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

Disputes involving the propriety of agency withholdings are commonly resolved at the summary judgment stage, *Harrison v. Exec. Office for U.S. Att'ys*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005), where the Court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving that each particular document falls within an exemption. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. The D.C. Circuit has emphasized that "[r]equiring agencies to provide public explanations for their redactions allows for adversarial testing of the agencies' claims, which helps focus the court's attention on the most important issues in the litigation and may reveal not otherwise apparent flaws in the agencies' reasoning." *Roth v. Dep't of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011).

**B.      The FBI Cannot Withhold Generic Ballistics Test Videos Under Exemption 7(E)**

**1.      FOIA Exemption 7(E) Requirements**

To invoke Exemption 7(E), an agency must demonstrate that the information was "compiled for law enforcement purposes" and that its public release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]"  5 U.S.C. § 552(b)(7)(E).  An agency must demonstrate "logically how the release of [the requested] information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  To assess whether the FBI's position here is "logical," the Court must consider a fundamental requirement of Exemption 7(E)—that the material withheld "describes secret investigative techniques and procedures." *Jaffe v. CIA*, 573 F. Supp. 377, 387 (D.D.C. 1983); *see also Myrick v. Johnson*, 199 F. Supp. 3d 120, 125 (D.D.C. 2016) (same); *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) (agency "must provide greater detail as to why the release of the information … would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public").

The agency must provide a "relatively detailed justification" for each record that permits the reviewing court to make a meaningful assessment of the redactions.  *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (citation omitted).  This detailed justification includes: "1) a description of the technique or procedure at issue in each document, 2) a reasonably detailed explanation of the context in which the technique is used, 3) an exploration of why the technique or procedure is not generally known to the public, and 4) an assessment of the way(s) in which the

individuals could possibly circumvent the law if the information were disclosed." *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 247 (D.D.C. 2013).

The FBI has failed to meet these essential Exemption 7(E) requirements—and repeatedly failed to acknowledge Congress's explicit carve-out for ballistics tests.

### 2.    Exemption 7(E) Does Not Apply to Generic Ballistics Test Videos Because They Are Well-Known to the Public

The Conference Report for the 1974 amendment to FOIA that added Exemption 7(E) *expressly excludes* "ballistics tests." The conference committee's statement delineating the scope of Exemption 7(E) is thus dispositive in this case and demonstrates that the FBI's position here must be rejected. The conference committee stated:

> The conferees wish to make clear that the scope of this exception against disclosure of 'investigative techniques and procedures' should not be interpreted to include routine techniques and procedures already well known to the public, *such as ballistics tests*, fingerprinting, and other scientific tests or commonly known techniques.

S. Rep. No. 93-1200, at 229 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 6285, 6291 (emphasis added).[2]

Given the explicit carve-out for ballistics tests in the 1974 conference report, it is no surprise that there is little caselaw concerning whether the government may withhold such records under Exemption 7(E). In the only case to be found addressing the matter, the court held, without any reservation, that the U.S. Park Police was not entitled to summary judgment with regard to

---

[2] Although the language of Exemption 7(E) was amended in 1986, the "techniques and procedures" set forth in the 1974 Conference Committee Report remain part of the FOIA. 5 U.S.C. § 552(b)(7)(E). Moreover, there is no indication that the 1986 amendments justify withholding ballistics tests. *See Henderson v. Office of Dir. of Nat'l Intelligence*, 151 F. Supp. 3d 170, 176 (D.D.C. 2016) (explaining purpose of 1986 amendment to Exemption 7(E) was to expand the provision's protection for non-investigative documents).

exemptions it claimed under Exemption 7(E) related to ballistics reports sought under FOIA. *Higgs v. U.S. Park Police*, 2018 WL 3109600, at *15-16 (S.D. Ind. June 25, 2018), *aff'd in relevant part*, 933 F.3d 897 (7th Cir. 2019) (government did not appeal denial of summary judgment with regard to ballistics reports).

Applying the standard here, it is plain that there is nothing "obscure or secret" about law enforcement's creation and use of ballistics testing—as explained *supra*, the use of this testing was known and acknowledged as far back as 1974.  Indeed, the *Vaughn* Index makes **no mention** of this Exemption 7(E) requirement.  SMF ¶ 15.  Yet Exemption 7(E) only applies when the government can establish that the records sought under FOIA would reveal a law enforcement technique that has been kept and should be kept secret from the public.  *See, e.g.*, *Leopold v. Dep't of Justice*, 301 F. Supp. 3d 13, 32 (D.D.C. 2018) (Exemption 7(E) applied to redactions of Secret Service document relating to "specific techniques" that the agency uses "to both detect and investigate potentially threatening comments," as well as "internal analysis," the release of which "would reveal the techniques used" for threat assessment and "would enable the targets of those methods and techniques to avoid detention and to develop countermeasures against the Secret Service's use of such methods and procedures"); *Myrick*, 199 F. Supp. 3d at 125 (Exemption 7(E) applied to records of ICE HIS undercover investigations where even by identifying the offices where such investigation occurred "criminal actors could adjust their activities in a way to avoid that office's undercover activities"); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 36 (D.D.C. 2012) (Exemption 7(E) applied to redacted portions of HHS documents relating to "investigative techniques and procedures that [the agency] uses to gather and analyze evidence that are not generally known to the public," and that even "[t]o describe these

techniques in greater detail here would risk disclosing them—the very harm Exemption 7(E) seeks to prevent").

Ballistics testing, and related videos created by the FBI, are commonly submitted as evidence in criminal prosecutions. *See, e.g.*, *United States v. Slatten*, No. CR 14-107, --- F. Supp. 3d ---,  2019 WL 3431438, at *29 (D.D.C. July 30, 2019) (criminal trial included presentation of video footage of FBI's ballistics-gelatin-block testing); *People v. Raucci*, 968 N.Y.S.2d 211, 222 (3d Dep't 2013) ("the demonstrative evidence consisted of an FBI video depicting six controlled explosions" in "a 40–pound block of ballistic gelatin"); *see also Creech v. Trimble*, 2013 WL 3491310, at *3 (N.D. Cal. July 11, 2013 (on *habeas* review of convictions in attempted murder case, court noted that an expert witness at trial "conducted ballistics tests using gelatin in order to calculate how far the shotgun pellets fired by [the defendant] could penetrate human tissue"), *aff'd sub nom. Creech v. Frauenheim*, 800 F.3d 100 (9th Cir. 2015).  In the *Slatten* case (which was joined with the criminal indictments of three others), the government resisted a motion *in limine* jointly filed by the defendants to limit the use of the FBI's ballistics videos at trial.  The government argued that the evidence would "assist the jury" by demonstrating the function and capabilities of the weapon" at issue, "and the effects on the projectile (or 'bullet') when it strikes different materials."  2014 WL 8726673 (D.D.C. May 22, 2014).  The government raised no concern that the inclusion of the video evidence would divulge a secret law enforcement technique.

The FBI's method of testing ballistics using gelatin blocks is well known to the public and cited often by, for example, firearms enthusiasts and trainers.  SMF ¶ 16.  The 9mm Luger, one of the ammunition types at issue in NPR's FOIA request, is the type of round that FBI agents themselves carry, and FBI officials have publicly justified their use of that bullet by explaining exactly how damaging it is to the human body.  SMF ¶ 17.  Similarly, the .223 Remington/5.56mm

NATO round is (as the name implies) the round used by NATO troops in conflict zones. There is considerable public information available that makes clear that the bullet is very destructive. SMF ¶ 18. Accordingly, if, as the Court has held, the government may not invoke Exemption 7(E) to protect "techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television," *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 85-58 (D.D.C. 1989) ("nothing exceptional or secret about … the use of wired informants and 'bugs' secretly placed in rooms that are under surveillance"), then the FBI is estopped to conceal information about its creation and use of ballistics testing videos—a technique revealed in court proceedings to secure convictions that has garnered widespread attention. Indeed, the government should be precluded from taking contrary positions with regard to when and how ballistics test videos are disclosed to the public to protect the integrity of the judicial process, and to prevent the FBI from playing fast and loose with the courts by taking one position to secure convictions and another position to resist FOIA requests.

The government's *Vaughn* Index fails to provide a logical or even detailed justification for withholding the ballistics test videos on the asserted ground that individuals could possibly circumvent the law if the information were disclosed. The FBI claims that "release of these videos would reveal the performance capabilities of specific types of ammunition and their ability to wound individuals," which could "enable criminals to discern which types of ammunition they should use in commission of different crimes and how they could more effectively cause harm to other individuals," but as discussed *supra*, such videos are already released and used in criminal trials. Moreover, as discussed *infra* at 14-16, the possibility that individuals could "circumvent the law" must be more specific here than the generalized and unsubstantiated concerns the FBI asserts.

**C.**     **The FBI Cannot Withhold Generic Ballistics Test Videos Under Exemption 7(F)**

**1.**     **FOIA Exemption 7(F) Requirements**

Under Exemption 7(F), information is protected where disclosure would "endanger the life or safety of any individual."  5 U.S.C. § 552(b)(7)(F).  "In determining whether Exemption 7(F) applies, courts look for some nexus between disclosure and possible harm and whether deletions were narrowly made to avert the possibility of such harm." *Boehm v. FBI*, 2013 WL 2477091, at *36 (D.D.C. June 10, 2013).

While Exemption 7(F) "may be invoked to protect 'any individual' reasonably at risk of harm," the agency must focus its deletions "narrowly."  *Long v. Dep't of Justice*, 450 F. Supp. 2d 42, 79-80, *order amended on reconsideration*, 457 F. Supp. 2d 30 (D.D.C. 2006), *amended*, 479 F. Supp. 2d 23 (D.D.C. 2007).  Thus, where the Department of Justice "fail[s] to demonstrate with sufficient specificity that releasing information reasonably could be expected to endanger the life or physical safety of any individual," the agency is not permitted to assert Exemption 7(F).  *Id.* at 80.  Where, as here, the FBI "offers little more than conclusory assertions that disclosure will increase the chances that third parties will be harmed in some way…. [s]uch unsupported speculation cannot serve as a justification for withholding information under Exemption 7(F)." *Id.*

Exemption 7(F) must apply to individuals who can be identified with some degree of specificity.  In *ACLU v. Department of Defense*, 543 F.3d 59 (2d Cir. 2008), *vacated on other grounds*, 558 U.S. 1042 (2009), for example, the court noted that "the phrase 'any individual' in exemption 7(F) may be flexible, but is not vacuous."  *Id.* at 67.  The court continued:

> [I]t is true that the statute does not read 'any *named* individual,' and
> we thus understand it to include individuals identified in some way
> other than by name - such as, for example, being identified as family
> members or coworkers of a named individual, or some similarly

> small and specific group. This does not, however, mean that the
> 'individual' contemplated by exemption 7(F) need not be identified
> at all, or may be identified as a member of a vast population.

*Id*. at 67-68.  The Second Circuit explained that "by requiring a showing of danger to an individual,

Congress provided a constraint limiting exemption 7(F) to its intended scope – the protection of

individuals subject to a non-speculative risk of harm incident to a law enforcement investigation."

*Id*. at 80.

Although the D.C. Circuit has not adopted the Second Circuit's requirement that an agency

identify a specific "individual" who might be harmed by disclosure, *Elec. Privacy Info. Ctr. v.

DHS*, 777 F.3d 518 (D.C. Cir. 2015), this Circuit does exclude from consideration risks that are

speculative with respect to any individual.  *Id*. at 524.  "In reviewing claims under [FOIA

E]xemption 7(F), courts have inquired whether there is some nexus between disclosure and

possible harm and whether the deletions were narrowly made to avert the possibility of such harm."

*Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citing *Albuquerque

Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)); *see also Linn v. Dep't of

Justice*, 1995 WL 631847, at *8 (D.D.C. Aug. 22, 1995) (inquiring as to "whether there is some

nexus between disclosure and possible harm").  The court will accord deference to the agency's

assessment of danger, but only when it supplies facts to support it.  *See id.* at *9; *see also Campbell

v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (holding that, because the FBI specializes in

law enforcement, "its decision to invoke exemption 7 is entitled to deference," but the court's

review is not "vacuous").  The FBI has not—and cannot—make this specific showing here.

### 2.   FOIA Exemption 7(F) Does Not Apply Here Because the FBI's Assertion Is Merely Conclusory and Speculative

The FBI's *Vaughn* Index is premised on the kind of "conclusory assertions" and

"unsupported speculation," which "cannot serve as a justification for withholding information

under Exemption 7(F)." *Long*, 450 F. Supp. 2d at 79-80. The government speculates that release of FBI ballistics testing videos could "enable criminals to make informed decisions on how best to injure others through the use of specific types of ammunition," SMF ¶ 15, but they have put forth no evidence in support of these broad assertions—nor could they. *Cf. Elec. Privacy Info. Ctr.*, 777 F.3d at 523 (concluding exemption 7(F) applied to emergency plan developed in direct response to 2005 bombing of London transportation system); *Public Emps. for Envtl. Responsibility v. U.S. Section, Inter'l Boundary & Water Comm., U.S.-Mexico*, 740 F.3d 195, 201 (D.C. Cir. 2014) (concluding exemption 7(F) applied to dam inundation maps where government included in record an intelligence alert from the Department of Homeland Security describing an alleged plot by drug traffickers to blow up a dam).

The government's scare tactic fails to meet the measure of Exemption 7(F).  The law does not permit an agency to forgo the "nexus" test and simply identify a possible risk without also identifying non-speculative harm to individuals whom disclosure would put at risk.  The agency need not identify these individuals by name, but it must nevertheless show that there are certain individuals in need of 7(F) protection.  *ACLU*, 543 F.3d at 80.  All of the FBI's "individuals" are hypothetical; there are no names or identifying characteristics about the FBI's "individuals" that would put specific types of individuals in any danger if the requested videos were released.  *Cf. Anderson v. Fed. Bureau of Prisons*, 2018 WL 6573282, at *3 n.4 (D.D.C. Dec. 13, 2018) (Exemption 7(F) "properly invoked" where government made showing in *Vaughn* Index "explaining potential endangerment of third-party inmate 'due to security and ... allegations associated' with the inmate"); *Dorsey v. Exec. Office for U.S. Att'ys*, 2018 WL 4762256, at *3 (D.D.C. Oct. 2, 2018) (Exemption 7(F) properly applied to transcript of "discussion of ... drug trafficking [activities], and possible reasons for retaliation against individuals who cooperated with

14

the investigation").  A statute written to protect individuals from risk of harm if law enforcement activity were exposed cannot also support an interpretation that prevents an agency from disclosing documents that do not name or even contemplate any individuals or groups of individuals.  The FBI has misunderstood the function of the 7(F) exemption, and cannot withhold the generic ballistics test videos under this provision.

In addition, the government's arguments are foreclosed by the public domain doctrine because the nature of generic ballistics testing information, and data to be gleaned regarding "different types of ammunition to harm individuals" have already been disclosed in criminal prosecutions.  "Under [the] public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (collecting cases).  "The logic of this doctrine is that where information requested is truly public, the enforcement of an exemption cannot fulfill its purposes." *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 74 (D.D.C. 2012) (citations and internal quotation marks omitted).

Here, the government claims that it cannot produce ballistics testing videos because the information contained in those videos would "inform criminals as to the ability of different types of ammunition to harm individuals."  But this information is ***already*** publicly available, and the FBI has itself released such information in various settings. *See supra* at 10.  There is nothing unique about the generic ballistics testing videos here identified by the government necessitating withholding.  Indeed, the government's suggestion that disclosing the videos would "inform criminals" is a mischaracterization of what ballistics testing is for, and what information such videos convey.  Ballistics tests are lab experiments meant to confirm that bullets act the way the manufacturer claims they do.  Accordingly, the overall destructiveness of such bullets is not only

public, it is advertised and broadly obvious.  SMF ¶ 19.  It is the trauma specifics—the information surgeons would need to know, for example, to treat severely injured patients—that ballistics test videos can help convey.  Accordingly, the FBI's release of the generic ballistics testing videos cannot reasonably be expected to endanger the life or physical safety of anyone, foreclosing the government's assertion of Exemption 7(F).

Because the FBI has failed to meet its burden to show that the two exemptions it relies upon apply here, the Court should grant NPR summary judgment and order the government to promptly release the requested records.

### D.      The FBI's *Vaughn* Index Fails to Provide a Justification for Withholding Each of the 97 Ballistics Test Videos

To be entitled to summary judgment, an agency must prove that "***each document*** that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (emphasis added) (citation omitted).  When claiming one of the FOIA's exemptions, the agency bears the burden of providing a "'relatively detailed justification' for assertion of an exemption, and must demonstrate to a reviewing court that records withheld are clearly exempt."  *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citing *Mead Data Cent.*, 566 F.2d at 251).

Here, although the government belatedly identified 97 individual videos responsive to NPR's FOIA request, the FBI's *Vaughn* Index simply lumps them all together to withhold them ***in full*** without explaining why redactions are not possible, segregable portions are not available, or even explaining why the asserted exemptions apply to each different video except generically repeating the language of the exemptions themselves.  In so doing, the FBI has done "nothing but parrot the statutory language," whereas "[a]ffidavits claiming exemptions must still be sufficiently detailed to allow effective judicial review."  *Brown v. F.B.I.*, 873 F. Supp. 2d 388, 407 (D.D.C.

2012).  For example, here, in invoking Exemption 7(F), the FBI must—but has not—specifically identify how each of the withheld generic videos might endanger the life or physical safety of any individual.  This showing simply cannot be made in the aggregate—as the government has done in this case.  The FBI failed to make the requisite showing that "**each** document that falls within the class requested" is exempt from disclosure.  *Goland*, 607 F.2d at 352 (emphasis added).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for summary judgment.

Dated:  October 16, 2019

Respectfully submitted,

/s/  *Lisa B. Zycherman*
Lisa B. Zycherman (D.C. Bar No. 495277)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
202-973-4280

Thomas R. Burke (appearing *pro hac vice*)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
San Francisco, CA 94111
415-276-6500

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL PUBLIC RADIO, INC.,** *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03066-CJN |
| | ) | |
| **FEDERAL BUREAU OF INVESTIGATION**, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7(h), plaintiffs National Public Radio, Inc. and Rebecca Hersher, a reporter on its Science Desk (collectively, "NPR") submit this statement of material facts as to which NPR contends there is no genuine issue.

1.      On December 3, 2015, NPR reported on a study of gunshot wound patients in Newark, New Jersey, finding that gunshot wounds have become more lethal and that more patients have had multiple wounds, but that there is a lack of data sharing between, for example, health and law enforcement to explain the increase and severity of gunshot wounds.  Declaration of Lisa B. Zycherman ("Zycherman Decl.") ¶ 2, Ex. 1.

2.      On October 4, 2017, NPR reported on the damage done by bullets during a mass shooting in Las Vegas, Nevada.  Zycherman Decl. ¶ 3, Ex. 2.

3.      On August 1, 2018, NPR published a video investigating the science behind why some bullets are more destructive than others.  Zycherman Decl. ¶ 4, Ex. 3.  To further investigate

this story, NPR reporter Rebecca Hersher reviewed ballistics research and sought high-speed ballistics test videos for common ammunition that the FBI produces.

4.     On April 19, 2018, NPR submitted a FOIA request to the FBI seeking

> video recordings of ballistics tests conducted with common handgun and rifle ammunition, fired into ballistics gelatin, … video of common ammunition in multiple calibers and cartridges including but not limited to: .9mm full metal jacket, .9mm expanding, .22 full metal jacket, and .223 full metal jacket.

Zycherman Decl. ¶ 5, Ex. 4.  NPR sought production of the recordings "in digital form as AVI, FLV, MP4, MOV or another widely used filetype."  *Id*.  NPR did not seek identifying information regarding specific FBI cases or investigations.  Instead, NPR plainly sought only generic video recordings of ballistics tests.

5.     NPR asked the FBI to waive any applicable fees "because the information as used by National Public Radio is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  Zycherman Decl. ¶ 5, Ex. 4.

6.     By letter to Ms. Hersher dated May 22, 2018, the FBI acknowledged that it received NPR's request, assigned it "FOIPA Request no.: 1403613-000," and described the subject of the request as "Video Recordings of Ballistics Tests (Common Handgun and Rifle Ammunition)." The government further stated that "[m]aterial responsive to your request is being withheld in full pursuant to Title 5, U.S. Code 522, subsection (b)(7)(E) [5 U.S.C. § 552 (b)(7)(E)], and your request is being closed."  Zycherman Decl. ¶ 6, Ex. 5.

7.     NPR filed an administrative appeal of the FBI's denial on August 14, 2018, arguing that the FBI's Exemption 7(E) claim was conclusory and insufficient, and that that Exemption 7(E) does not apply to routine techniques and procedures already well known to the public, such as the ballistics tests sought in NPR's request.  Zycherman Decl. ¶ 7, Ex. 6.  In particular, NPR pointed

out that the Conference Report for the 1974 amendments to FOIA that added Exemption 7(E) specifically excluded "ballistics tests" from the scope of the exemption because they are routine and already well-known to the public.  *Id.*

8.      On September 28, 2018, the FBI denied NPR's administrative appeal, again relying on Exemption 7(E) to conclude "it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision," because it would "disclose techniques and procedures or guidelines for law enforcement investigations or prosecution."  Zycherman Decl. ¶ 8, Ex. 7.

9.      NPR filed the instant action on December 12, 2018, seeking to enjoin the government from continuing to improperly withhold records responsive to its FOIA request.  ECF No. 1.

10.      NPR amended its complaint to add the U.S. Department of Justice as a defendant on March 4, 2019.  ECF No. 10.

11.      On March 18, 2019 the government informed NPR that they required clarification regarding the caliber of ammunition sought by NPR's request so that they could conduct a search for responsive records.  ECF No. 14.  NPR provided the requested information.  *Id*.  Consequently, the FBI confirmed that it had begun "manually searching for potentially responsive records."  *Id*.

12.      By letter dated June 10, 2018, the FBI notified NPR that has located 97 responsive videos and that these videos include:  "76 videos showing testing of .223 Remington/5.56 mm NATO ammunition fired into ballistic gelatin; and 21 videos with 9 mm Luger ammunition fired into ballistic gelatin."  Zycherman Decl. ¶ 9, Ex. 8.  The FBI further informed NPR that it was withholding these video records pursuant to FOIA Exemption 7(E), and for the first time additionally cited Exemption 7(F).  *Id*.

13.     On August 15, 2019, the Government produced a *Vaughn* Index to NPR only listing the two types of responsive video recordings and setting forth the two FOIA exemptions invoked to withhold the recordings in full.  Zycherman Decl. ¶ 10, Ex. 9.

14.     NPR objected that the FBI's initial *Vaughn* Index was insufficient.  ECF No. 22.

15.     On August 16, 2019, the FBI produced a second *Vaughn* Index, which was not in the form of an affidavit and added two paragraphs stating the grounds for the agency's reliance on FOIA Exemptions 7(E) and 7(F).  Zycherman Decl. ¶ 11, Ex. 10; *see also* ECF No. 22.  The FBI's second *Vaughn* Index merely refers to the two types of video recordings categorically and provides a general statement regarding the application of the two FOIA exemptions.  Zycherman Decl. ¶ 11, Ex. 10.  The *Vaughn* Index repeats the language of the FOIA exemptions and cites non-specific concerns that "release of this information would enable criminals to circumvent the law," and "could reasonably be expected to endanger the lives and safety of individuals."  *Id*.  The *Vaughn* Index makes **no mention** of whether the ballistics test videos are obscure or secret.  *Id.*

16.     The FBI's method of testing ballistics using gelatin blocks is well known to the public and cited often by, for example, firearms enthusiasts and trainers.  Zycherman Decl. ¶ 12, Ex. 11; *id.* ¶ 13, Ex. 12 ("The conditions for testing using gelatin are used by the FBI and are generally acceptable in the ballistics community.").

17.     The 9mm Luger, one of the ammunition types at issue in NPR's FOIA request, is the type of round that FBI agents themselves carry, and FBI officials have publicly justified their use of that bullet by explaining exactly how damaging it is to the human body.  Zycherman Decl. ¶ 14, Ex. 13 (comments from FBI Special Agent Ray Cook); *id.* ¶ 15, Ex. 14.

18.     The .223 Remington/5.56mm NATO round is (as the name implies) the round used by NATO troops in conflict zones and therefore there is a lot of public information available that

makes clear that the bullet is very destructive.  Zycherman Decl. ¶ 16, Ex. 15; *id.* ¶ 17, Ex. 16; *id.* ¶ 18, Ex. 17; *id.* ¶ 19, Ex. 18.

19.     The overall destructiveness of such bullets is not only public, it is advertised and broadly obvious.  Zycherman Decl. ¶ 20, Ex. 19; *id.* ¶ 21, Ex. 20; *id.* ¶ 22, Ex. 21; *id.* ¶ 23, Ex. 22.

Dated:  October 16, 2019

Respectfully submitted,

*/s/  Lisa B. Zycherman*
Lisa B. Zycherman (D.C. Bar No. 495277)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
202-973-4280

Thomas R. Burke (appearing *pro hac vice*)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
San Francisco, CA 94111
415-276-6500

*Counsel for Plaintiffs*