### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:18-cv-03066 (CJN) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | |
| *Defendants*. | |

### MEMORANDUM OPINION

In this Freedom of Information Act suit, Plaintiffs National Public Radio and Rebecca Hersher seek to compel the FBI to release videos depicting ballistics tests of certain types of ammunition. *See generally* Am. Compl., ECF No. 10. On the Parties' Cross-Motions for Summary Judgment, the Court concluded that the FBI had conducted an adequate search but had not sufficiently justified its claims that the videos were exempted from disclosure and therefore ordered the FBI to produce the videos. *See generally* Mem. Op., ECF No. 36; Order ("Release Order"), ECF No. 35. The FBI now moves for reconsideration, based in part on three new declarations. *See generally* Defs.' Mot. for Recons. ("Defs.' Mot. Recons."), ECF No. 38. Because the Court concludes that reconsideration is appropriate and that the FBI has now justified its withholdings, it grants the FBI's Motion for Reconsideration and grants summary judgment to the FBI in full.

### I.        Background

Over the years, NPR has published reports regarding "the increasing lethality of, and injuries sustained from, common gun ammunition." Pls.' Resp. in Opp'n to Defs.' Mot. for Summ.

J. ("Pls.' Opp'n") at 1, ECF No. 26.  In 2018, Hersher, an NPR journalist, filed a FOIA request with the FBI seeking "video recordings of ballistics tests conducted with common handgun and rifle ammunition, fired into ballistics gelatin, . . . including but not limited to:  .9mm [sic] full metal jacket, .9mm [sic] expanding, .22 full metal jacket, and .223 full metal jacket." Pls.' FOIA Req. at 2, ECF No. 23-3 at 3.  The FBI denied the request without conducting a search for responsive records, stating that it would categorically withhold ballistics videos under FOIA Exemption 7(E), *see* David M. Hardy's Letter of May 22, 2018, ECF No. 23-3 at 9, and later denied NPR's administrative appeal on the same grounds, *see* Sean R. O'Neill's Letter of Sept. 28, 2018, ECF No. 23-3 at 25–26.

NPR and Hersher filed this suit against the FBI and the Department of Justice in December 2018.  *See generally* Compl., ECF No. 1; *see also* Am. Compl.  The FBI then agreed to conduct a search, *see* David M. Hardy Decl. ("1st Hardy Decl.") ¶¶ 12–13, ECF No. 23-2, and located 97 videos that it determined were responsive:  "76 videos showing testing of .223 Remington / 5.56 mm NATO ammunition . . . and 21 videos with 9 mm Luger ammunition," David M. Hardy's Letter of Jun. 10, 2019, ECF No. 23-3 at 28.  After reviewing the records, the FBI again decided to withhold them completely under FOIA Exemptions 7(E) and 7(F).  *See id.*

On consideration of the Parties' Cross-Motions for Summary Judgment, the Court resolved two disputes:  whether the FBI adequately searched its records for potentially responsive videos and whether the records were properly within the scope of either exemption.  *See generally* Mem. Op.  As relevant here, the FBI argued that release of the videos might increase the risk of evasion of law enforcement (Exemption 7(E)) or harm to any individual (Exemption 7(F)).  *See* Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 6–11 (citing 5 U.S.C. §§ 552(b)(7)(E)–(F)), ECF No. 23. NPR contested the applicability of each provision and argued that the FBI's *Vaughn* Index was

procedurally deficient.  *See* Mem. of Law in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 6–

17, ECF No. 24.[1]

On August 28, 2020, after oral arguments and an *in camera* review of the disputed videos,

the Court concluded that the FBI had not provided a "relatively detailed justification" for

withholding the videos pursuant to Exemption 7(E) or 7(F), *see* Mem. Op. at 13–17, and ordered

the FBI to release the videos, *see generally* Release Order.  In particular, the Court concluded that:

> The Hardy Declarations and the FBI's briefs are certainly full of conclusory statements about the risk of disclosure, but they provide the Court with little concrete information about how a nefarious actor might translate the information in the videos into actionable intelligence about FBI tactics, techniques, and procedures.  It is certainly conceivable that a comprehensive set of testing results might provide potential criminals with an advantage, but as NPR argues and emphasized at oral argument, *these* types of run-of-the-mill ammunition—9 mm Luger and .223 Remington (5.56 mm NATO) rounds—have been in common use for decades and are widely known and understood.  NPR therefore contends that, to justify withholding under Exemption 7(E), the videos must contain something more than generally available information about those types of ammunition.
>
> Pressed on this point at oral argument, the FBI conceded that the videos contain no commentary by which FBI officials registered their reactions to the tests or discussed any information the FBI learned from the tests.  In an abundance of caution, the Court therefore exercised its prerogative to view a sample of the videos *in camera* so as to understand the connection between the videos and the risks the Hardy Declarations claim would materialize if the FBI were forced to produce the videos to journalists.
>
> Having viewed the videos, the Court concludes that the FBI's assertion of risks is unfounded.  Each video lasts no more than a few seconds and depicts a bullet striking a gelatin block in slow motion.  The videos contain no commentary or proprietary analysis that might betray the FBI's thoughts about a particular type of ammunition.  They do not contain details about how the FBI conducts the tests or sets up its laboratories in some special manner known only to law enforcement. They do not show the rounds striking various types of body armor, thereby disclosing information about what sort of armor the FBI may have procured to protect its agents.  It appears that the ammunition's manufacturer—or just about anyone with an interest in doing so—could replicate the tests and achieve the same results.  The videos do not contain any sensitive government information that might distinguish them from ballistics tests conducted in any other laboratory, and the Court is unable to discern any appreciable risk that the videos' "disclosure could

---

[1] Plaintiffs combined their Motion (1–2), supporting Memorandum of Law (3–24), and Statement of Material Facts (25–29) into a single PDF file, ECF No. 24. All citations to those documents are to Plaintiffs' own pagination.

reasonably be expected to risk circumvention of the law." The FBI may not withhold the records under Exemption 7(E).

Op. at 15–17 (footnote and citations omitted). Regarding the FBI's justifications for withholding under Exemption 7(F), the Court concluded that:

> The Court need not discuss the Parties' arguments about the class of individuals who might be at elevated risk of harm . . . because, as with Exemption 7(E) above, the FBI has not justified its assertions that the videos contain any information bad actors might use to harm *anyone*. The FBI has therefore not demonstrated that the videos are subject to Exemption 7(F). The Court also need not reach NPR's arguments about whether the videos are already in the public domain.

*Id.* at 17.

On September 28, 2021, the FBI filed a Rule 59(e) Motion for Reconsideration regarding the Court's Opinion and Order. *See generally* Defs.' Mot. Recons. The FBI has submitted three new declarations elaborating on its justifications for withholding the videos and asks the Court to reconsider its conclusion that the claimed FOIA exemptions do not apply. *See id.*; Joseph E. Bender Decl. ("Bender Decl."), ECF No. 38-1; A. Scott Patterson Decl. ("1st Patterson Decl."), ECF No. 38-2; A. Scott Patterson Decl. ("2d Patterson Decl."), ECF No. 41-1.

Throughout this litigation, the Parties' briefs—and especially the FBI's submissions—assumed that all 97 of the videos identified by the FBI as responsive to Plaintiffs' FOIA request were, in fact, responsive. On March 12, 2021, however, the Parties filed a Joint Status Report in which they clarified that only 62 of those 97 videos are actually responsive. *See generally* Joint Status Report, ECF No. 47; *see also* discussion *infra* Parts III.A–B.

## II.    FBI's Motion for Reconsideration

A party may move to alter or amend a judgment pursuant to Rule 59(e) within twenty-eight days of entry of the judgment. Fed. R. Civ. P. 59(e). Rule 59(e) permits reconsideration when "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir.

2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  But if a motion for reconsideration is untimely or otherwise does not qualify under Rule 59, it is properly construed as a motion under Rule 60(b), which permits reconsideration (without Rule 59's twenty-eight-day requirement) for any one of several reasons, including:

> (1)  mistake, inadvertence, surprise, or excusable neglect;
> (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or]
> (6)  any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In their briefs, the Parties treat the FBI's Motion as a motion for reconsideration under Rule 59(e).  But Rule 59(e) requires motions to be filed within twenty-eight days of the relevant judgment and does not allow extensions of that deadline.  *See* Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 6(b)(2) (prohibiting extensions to Rule 59(e)'s deadline).  The FBI's Motion was filed on September 28, 2020, more than twenty-eight days after the Court issued its prior Opinion and Order on August 28, 2020.  It was therefore untimely under Rule 59(e)—a point on which the Parties agree—and thus the Court considers it as a motion under Rule 60(b).

District courts are vested with a large measure of discretion in deciding whether to grant relief under Rule 60(b), but should grant such relief "sparingly" and only in "extraordinary circumstances."  *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996), *amended* (Feb. 20, 1996) (citations omitted).  The Court of Appeals has stated that:

> When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper even though the original failure to present that information was inexcusable.

*Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

In FOIA cases where the government presents new facts and moves for reconsideration after an initial judgment, courts typically consider the motion under Rule 60(b)(6).  In *Computer Professionals*, 72 F.3d at 901, for example, the Secret Service sought to withhold records pursuant to FOIA Exemptions 7(A) (law enforcement proceedings), 7(C) (invasion of personal privacy), and 7(D) (confidential source).   After *in camera* review, the district court granted summary judgment for the plaintiff, concluding that release would not constitute a threat to anyone's privacy interest and deeming the government's justifications for its 7(D) claim an inadequate "*post hoc* rationalization."  *Id.* at 902.  When the government moved for reconsideration under Rule 59(e) and provided an additional declaration supporting its arguments, the district court denied the motion as untimely (and also declined the government's request that it treat the motion as a Rule 60(b) motion).  *Id.*

The Court of Appeals held that the district court should have considered the new evidence and explained that Rule 60(b) permits the government to present additional evidence—even if those facts were previously available and an adverse judgment has already been handed down— when the case involves not only the government's interests but also the interests of a third party expressly protected by FOIA.  *See Comput. Pros. for Soc. Resp.*, 72 F.3d at 903.  Since then, the Court of Appeals has concluded that 60(b) relief was appropriate in similar situations.  *See, e.g.*, *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Hum. Servs.*, 901 F.3d 343, 355 (D.C. Cir. 2018) (quoting *Comput. Pros. for Soc. Resp.*, 72 F.3d at 903); *August v. FBI*, 328 F.3d 697, 701–02 (D. C. Cir. 2003) (finding reconsideration appropriate when disclosure "would endanger the safety and privacy of third parties").

Third-party concerns also make it appropriate to revisit the Court's prior Opinion and Order in this case, where the government has proffered additional information to demonstrate that

releasing the videos would risk endangering members of the public and law enforcement officers.[2] The Court therefore concludes that reconsideration is appropriate and revisits the FBI's exemption claims and the sufficiency of the *Vaughn* Index.

### III.     The Withholdings

The FBI continues to argue that Exemptions 7(E) and 7(F) both protect the ballistics videos from disclosure.   NPR does not contest that the videos were compiled for law enforcement purposes,[3] but challenges the applicability of each provision, essentially contending that (1) publication of the videos doesn't pose a threat of danger (or that the FBI has only explained such risk with conclusory statements); and (2) the videos don't contain non-public information. *See generally* Pls.' Resp. in Opp'n to Defs.' Mot. Recons at 10–14 ("Pls.' Opp'n Recons."), ECF No. 39; Pls.' Mot. at 7–17.

### A.     Exemption 7(F)

FOIA Exemption 7(F) protects information that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  "The exemption does not require that a particular kind of individual be at risk of harm; 'any individual' will do.  Disclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices."  *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 205 (D.C. Cir. 2014).  The Court of Appeals interprets Exemption 7(F) broadly and does not require the government "to identify the specific individuals at risk from disclosure." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (holding that Exemption 7(F) does not require the government to know "[e]xactly who [will be endangered]

---

[2] See discussion *infra* Parts III.A–B.
[3] To fall within FOIA Exemption 7, "documents must first meet a threshold requirement:  that the records were 'compiled for law enforcement purposes.'"  *Pub. Emps. for Env't Resp.*, 740 F.3d 195, 202–03 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)).

beyond a general group" when the type of danger itself provides a limit).  But the government

must still provide a "reasonably detailed justification" for any exemption claim, and the FBI

therefore must explain, with reasonable detail, why withholding the videos under Exemption 7(F)

is appropriate.

> In its Motion for Summary Judgment, the FBI argued that:

> Release of the ballistics testing videos at issue would inform criminals as to the
> ability of different types of ammunition to harm individuals.  Considering release
> of this information would enable criminals to make informed decisions on how best
> to injure others through the use of specific types of ammunition, the FBI determined
> release of these videos could reasonably be expected to endanger the lives and
> safety of individuals.

Defs.' Mot. at 9–10 (internal citations omitted).  In response, NPR argued that any harm alleged

by the FBI is speculative and that the claimed class of individuals is so amorphous as to render the

exemption's text meaningless.  Pls.' Mot. at 12–16.  On summary judgment, the Court held that

the FBI had not provided a "relatively detailed justification" supporting its claims that releasing

the videos would create a risk of harm to any individual and that it had therefore failed to prove

that the videos were protected under Exemption 7(F).  *See supra* Part I; Mem. Op. at 17.

In its Motion for Reconsideration, the FBI has expanded on its prior argument by providing

additional information and details about the types of information contained in the videos and by

explaining how nefarious actors could use that information to cause harm.  In particular, the FBI

contends that providing information about the specific types of ammunition the FBI chooses to

test—and the results of those tests—would provide a "blueprint" to criminals that would allow

them to select the best type of ammunition to cause serious injury or death.  Defs.' Mot. Recons.

at 16; Bender Decl. ¶ 12.  According to the FBI, the videos demonstrate the "wounding

differences" among different types of ammunition—including information about when a projectile

expands upon impact, Defs.' Mot. Recons. at 14—and would provide criminals with the

information they need to select better projectiles to fatally wound different types of people, *id.* at 16 (quoting 1st Patterson Decl. ¶ 9).

To illustrate how releasing the videos would make criminals more lethal, the FBI identifies an incident in which an individual's attempt to assassinate a Texas judge was thwarted by his incomplete understanding of the terminal performance of the bullet he used.  2d Patterson Decl. ¶ 12.  The FBI argues that providing the public with a library of videos clearly depicting the terminal characteristics of various bullets would "enable criminals to make informed decisions on how best to injure others."  *Id.* ¶ 13.

These new details provide the Court with the basis for the FBI's Exemption 7(F) argument that was lacking in the first round of briefs.  Before, the Court had only the FBI's conclusory statements asserting that the videos could "inform criminals as to the ability of different types of ammunition to harm individuals" and "enable criminals to make informed decisions on how best to injure others through the use of specific types of ammunition."  Defs.' Mot. at 9–10.  But the initial briefs and declarations provided no specific explanation of how those risks could materialize, and the Court was left to base its decision on generalized and conclusory assertions.

In its new declarations, the FBI finally connects the dots:  the videos at issue provide a comprehensive "library" that would "provide criminals a playbook for which bullet damage patterns seem more significant than others . . . thus educating their selection of ammunition to be use[d] during . . . violent encounters."  2d Patterson Decl. ¶ 11.  And the FBI's research also has implications for the safety of its own agents:  the FBI utilizes such research to make decisions regarding "weapons and protective gear."  Bender Decl. 38-1 ¶ 12.[4]  Because the videos portray

---

[4] The Parties' most recent Joint Status Report indicates that 35 of the 97 videos are not responsive to NPR's FOIA request because they involve "off-market ammunition designed specifically for use by law enforcement and military," and therefore the dispute here relates only to the remaining 62 videos.  Joint Status Report, ECF No. 47.  It is unclear to the Court from the present record whether the FBI tests publicly available ammunition for the purpose of informing

the FBI's data-gathering efforts regarding bullets' "ability to inflict the most effective wound to a human adversary," 2d Patterson Decl. ¶ 10, they could allow nefarious actors to select ammunition that would "inflict greater damage to their intended target [or] law enforcement officer[s] responding to crime scenes," 1st Patterson Decl. ¶ 9.

The Court thus concludes that the FBI has adequately justified withholding the videos because their release "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F), and thus that they are properly withheld under Exemption 7(F).

## B.    Exemption 7(E)

Although the Court is not required to address the applicability of a second exemption after it has found withholding proper under the first, *see Elec. Priv. Info. Ctr.*, 777 F.3d at 528 (declining to reach alternative exemptions), it also reconsiders its prior conclusion regarding the FBI's 7(E) assertion.  Exemption 7(E) protects records that would disclose "techniques and procedures" or "guidelines" for investigations or prosecutions "if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

### 1.    Non-Public Information

NPR argues that 7(E) cannot exempt the videos because they do not depict "techniques and procedures" or "guidelines" for investigations or prosecutions.  5 U.S.C. § 552(b)(7)(E).  NPR's public-information argument has three prongs:  first, that the videos do not contain details about its tests that are known only to law enforcement (versus manufacturers' tests that are publicly available), Pls.' Opp'n Recons. at 11 (citing Mem. Op. at 16–17); second, that the videos only test

---

its own decisions regarding which ammunition or weapons FBI agents should use, but the Court believes it is a fair assumption that the FBI tests publicly available ammunition for the purpose of informing its decisions regarding "protective gear" to be worn by agents.  For that reason—as well as the reasons discussed *infra* Part III.B—the Court's conclusions are unaffected by the recent narrowing of the videos in dispute.

commonly used and found ammunition, *id.* at 13; and third, that the videos do not reveal any additional information that is not already public, *id.* at 14.

It is true that some cases state that Exemption 7(E) is meant to protect only "secret investigative techniques and procedures," *Jaffe v. CIA*, 573 F. Supp. 377, 387 (D.D.C. 1983), and "investigatory techniques that are not widely known to the general public," *Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997); *see also Myrick v. Johnson*, 199 F. Supp. 3d 120, 124–25 (D.D.C. 2016) (quoting *Jaffe*, 573 F. Supp. at 387). But in *Blanton v. Dep't of Justice*, 64 F. App'x 787, 789 (D.C. Cir. 2003) (per curiam), the Court of Appeals upheld DOJ's withholding of specific information about the administration of polygraph tests (e.g., the sequencing and content of questions) even though the general structure and technique of administering polygraphs is well known. The Court of Appeals later relied on *Blanton* to permit the Marshals Service to withhold "information regarding its administrative and operational guidelines and procedures utilized in investigat[ing] threats against federal court employees." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112 (D.C. Cir. 2007); *Sussman v. U.S. Marshals Serv.*, No. Civ.A. 03-610HHK, 2005 WL 3213912, at *9 (D.D.C. Oct. 13, 2005). District courts have interpreted those cases to permit withholding under Exemption 7(E) of "the confidential details of even publicly known techniques" and "commonly known procedures if disclosure could reduce or nullify their effectiveness." *Elec. Frontier Found. v. Dep't of Justice*, 384 F. Supp. 3d 1, 13–14 (D.D.C. 2019) (distinguishing *Jaffe*).

To balance the concerns about risk,

> courts in this District have found that the government carried its evidentiary burden where it provided 1) a description of the technique or procedure at issue in each document, 2) a reasonably detailed explanation of the context in which the technique is used, 3) an exploration of why the technique or procedure is not generally known to the public, and 4) an assessment of the way(s) in which individuals could possibly circumvent the law if the information were disclosed.

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 247 (D.D.C. 2013).

Here, the FBI has described the ballistics tests depicted in the videos at issue, explained why it uses such tests, asserted that several aspects of the tests are not publicly known, and given a reasonable explanation for how disclosure could possibly help criminals to act badly.  For its part, NPR contends that the FBI has already published the specific settings used in ballistics test videos, Pls.' Opp'n Recons. at 12, that the videos only test commonly available ammunition, *id.* at 13, and that the videos contain no additional information, such as commentary from the FBI, that reveal non-public law enforcement "techniques and procedures," *id.* at 4–5, 11.

NPR's claim that the FBI has already published the settings for its ballistics tests is unpersuasive.  Although the FBI conceded at oral argument that the gelatin blocks used for the tests are widely used and available to the public, it argues that several other aspects of the tests— including the camera settings and the angles from which ammunition is released—are not.  Bender Decl. ¶ 9.[5]  According to the FBI, the videos are also different from those that would be produced in a public or private lab because "while the 9 mm [sic] and 223/5.56 [sic] calibers might be the most common calibers sold in the U.S., the individual projectiles shown (the bullets) are not."  *Id.* ¶ 10.[6]  In fact, the FBI protects the "projectile technology" displayed within the videos with non-disclosure agreements when contracting for the ballistics tests.  Defs.' Mot. Recons. at 13; 1st Patterson Decl. ¶ 7.[7]

---

[5] NPR contends that even these details have been published by the FBI and therefore do not constitute non-public information.  Pls.' Opp'n Recons. at 12.  But in light of the fact that the publication proffered by NPR was issued in 1989, Pls.' Opp'n Recons. Ex. A, ECF No. 39-2, the Court is not persuaded that the camera settings, angles, and barriers the FBI uses in its tests today are publicly available.

[6] Because the Parties recently filed a Joint Status Report narrowing their dispute to 62 videos that do not depict tests of "off-market ammunition designed specifically for use by law enforcement and military," *see generally* Joint Status Report, ECF No. 47, the FBI's argument that the bullets in the videos are not "common" may no longer apply.  The Court nevertheless concludes that the remaining 62 videos contain non-public information including the specific settings used by the FBI in its ballistics tests.

[7] Like the FBI's contention that the projectiles in the videos are not "common," the Court cannot determine whether any of the "projectile technology" protected by non-disclosure agreements involves ammunition depicted in the recently narrowed set of disputed videos.  *See* Defs.' Mot. Recons. at 13; 1st Patterson Decl. ¶ 7.

NPR also contends that the ballistics tests are not sensitive or protected because the government itself regularly puts such records into evidence in criminal cases.  Pls.' Opp'n Recons. at 2.  But NPR cannot claim a "public-domain exception" to FOIA exemptions because it has not located the exact same records in public circulation—it merely claims that ballistics videos have generally been admitted into evidence.  *See Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (explaining that the public-domain exception requires the requester to show that there is a "permanent public record of the exact portions [of the records] he wishes").

More important, there is a qualitative difference between the use of individual videos at trial and production of a compilation of every single video the FBI has made.  Defs.' Reply in Supp. of Defs.' Mot. Recons. at 2, ECF No. 41.  In the context of privacy exemptions, courts have distinguished between the release of bits and pieces of private records spread across dockets and comprehensive databases containing vast amounts of information.  *See Ctr. for Investigative Reporting v. U.S. Customs & Immigration Enf't*, No. 1:18-cv-01964 (CJN), 2019 WL 6498817, at *3–4 (D.D.C. Dec. 3, 2019) (citing *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011); *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086, 1092 & n.5 (9th Cir. 2017)).  The same rationale applies here.  The results of one ballistics test might not cause much harm, but a comprehensive "library" of the FBI's ballistics testing methods would provide nefarious actors with substantially more information than an individual video.  *See* Defs.' Mot. Recons. at 14.  The Court therefore concludes that the ballistics tests qualify as law enforcement "techniques and procedures" under Exemption 7(E).  5 U.S.C. § 552(b)(7)(E).

## 2. Risk of Circumvention

Once an agency has demonstrated that certain information qualifies as "techniques and procedures" or "guidelines" for investigations or prosecutions, it must also show that release of the information "could reasonably be expected to risk circumvention of the law."  5 U.S.C.

§ 552(b)(7)(E).  The Court has already discussed the standard for evaluating an agency's 7(E)

assertion in its prior Opinion, Mem. Op. at 6–14, but restates the standard to the extent necessary

for the present analysis.

"Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell*

*v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  "[T]he exemption looks not just for circumvention of

the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but

for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably

expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a

reasonably expected risk." *Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009).

"Rather than requiring a highly specific burden of showing how the law will be circumvented,

exemption 7(E) only requires that the [agency] demonstrate logically how the release of the

requested information might create a risk of circumvention of the law."  *Id.* at 1194 (internal

quotation marks and alterations omitted).  Moreover,

> [b]ecause the FBI specializes in law enforcement, its decision to invoke exemption
> 7 is entitled to deference. [The] court's deferential standard of review is not,
> however, vacuous.  If the FBI relies on declarations to identify a law enforcement
> purpose underlying withheld documents, such declarations must establish a rational
> nexus between the investigation and one of the agency's law enforcement duties
> and a connection between an individual or incident and a possible security risk or
> violation of federal law.  If the declarations fail to supply facts in sufficient detail
> to apply the . . . rational nexus test, then a court may not grant summary judgment
> for the agency.

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (internal quotations and

citations omitted).

But even with the Court's deferential evaluation of the government's assertions of risk, the

government "must nevertheless provide a 'relatively detailed justification' . . . that permits the

reviewing court to make a meaningful assessment of the [withholding] and to understand how

disclosure would create a reasonably expected risk of circumvention of the law." *Am. Immigration*

*Council*, 950 F. Supp. 2d at 246 (quoting *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012)).

In the first round of summary judgment briefing, the FBI argued that

[t]he responsive videos are part of the important testing and research conducted by the FBI for law enforcement training and ammunition procurement. The disclosure of these videos would inform criminals how the FBI investigates the use of different types of ammunition in the commission of real-world criminal acts; and also how the FBI determines which types of ammunition are most effective for specific law enforcement applications. Revelation of this information would provide criminals with an understanding of which types of ammunition they should use to inhibit FBI efforts to investigate their criminal acts involving the use of firearms. It would also allow them to predict the use of specific types of ammunition in particular law enforcement applications, and inform them how best they should prepare for an armed confrontation with law enforcement. Furthermore, the FBI determined release of these videos would reveal the performance capabilities of specific types of ammunition and their ability to wound individuals. Public release of this information would enable criminals to discern which types of ammunition they should use in commission of different crimes and how they could more effectively cause harm to other individuals.

1st Hardy Decl. ¶ 19.

NPR responded in two ways. First, it contended that FOIA's legislative history created an "explicit carve-out" ensuring that Exemption 7(E) would not apply to data from ballistics tests. Pls.' Mot. at 8–9. Second, NPR argued that the government's declarations failed to provide enough information to justify applying the exemption. Pls.' Resp. to Defs.' Opp'n to Pls.' Mot. at 3–11, ECF No. 32. On reconsideration, the Court declines to revisit NPR's legislative history argument, which it found unpersuasive in its prior Opinion. Mem. Op. at 10–14. But it returns to NPR's contention that the FBI has only proffered conclusory statements justifying withholding the videos under Exemption 7(E).

The FBI must justify its withholding by providing "an assessment of the way(s) in which individuals could possibly circumvent the law if the information were disclosed." *Am. Immigration Council*, 950 F. Supp. 2d at 247. In addition to its explanations regarding criminals'

lethality, discussed above,[8] the FBI contends that the full library of videos "would arm adversaries with the foundational information about the offensive and defensive capabilities of law enforcement," Defs.' Mot. Recons. at 14, and that those adversaries could use the information contained in the videos "to circumvent the law by modifying the types of ammunition they use when dealing with law enforcement," *id.* (citing Bender Decl. ¶¶ 9–10).  More specifically, the FBI contends that the subset of ammunition tested by the FBI would assist criminals trying to identify the specific types of ammunition that are most effective in a firefight.  1st Patterson Decl. ¶ 9.  Just as a detailed list of the specific tires tested by NASCAR drivers might provide a shortlist to anyone trying to select the best tires for high-speed races,  release of the videos here would provide a shortlist to people trying to select ammunition on the basis of lethality and, by making those bad actors more lethal, increase their ability to circumvent the law.[9]  These justifications, along with FBI's new assertions regarding the information on ammunition wounding capacity displayed in the videos, *see* discussion *supra* Part III.A, provide the Court with the concrete information needed to demonstrate how a nefarious actor might translate the information contained in the videos into actionable intelligence about FBI tactics, techniques, and procedures.  The Court therefore concludes that the FBI has provided a "reasonably detailed justification" for withholding the videos under Exemption 7(E).

---

[8] *See* discussion *supra* Part III.A.

[9] The FBI also argues that the subset of ammunition selected for testing by the FBI provides information about the types of protective gear that offer the best protection in a shootout, allowing nefarious actors to better prepare for encounters with law enforcement.  Bender Decl. ¶ 12.  As discussed above, the Court assumes that the FBI's ballistics tests at least partially inform its decisions regarding "protective gear" to be worn by agents.  *See* discussion *supra* Part III.A n.4.  But the extent to which bad actors could glean information regarding protective gear capabilities from the narrowed subset of disputed videos is unclear.

### C. *Vaughn* Index Sufficiency

NPR also contests the sufficiency of the FBI's *Vaughn* Index, arguing that it is deficient because it does not identify each video or provide individual justifications for withholding, does not state why the videos can't be redacted or segregated to assuage the FBI's concerns, and does not provide proof of the alleged risks. Pls.' Mot. at 16–17.

NPR's contention that the FBI should be required to provide individual justifications for withholding each video does not make sense here, as the FBI is withholding each video on the same ground (and because production of all of the videos together would create a risk of harm as described in the declarations, *see, e.g.*, 2d Patterson Decl. ¶ 13). Although NPR correctly argues that FOIA requires the government to prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements," *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (citation omitted), there is no requirement that the government treat each document individually, *see Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).

> Context dictates our approach to the particularity required of agencies. An agency may not claim exemptions too broadly, thereby sweeping unprotected information within the statute's reach. *Mays v. DEA,* 234 F.3d 1324, 1328 (D.C. Cir. 2000) (rejecting withholding of all documents containing "investigative details" because Exemption 7 does not automatically protect such details). Broad, sweeping claims of privilege without reference to the withheld documents would impede judicial review and undermine the functions served by the *Vaughn* index requirement. The agency must therefore explain why the exemption applies to the document or type of document withheld and may not ignore the contents of the withheld documents. *Campbell,* 164 F.3d at 30–31 (disapproving submission that had no "language suggesting that the [agency] tailored its response to a specific set of documents").
> On the other hand . . . [w]e have never required repetitive, detailed explanations for each piece of withheld information—that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof. *See Keys v. U.S. Dep't of Justice,* 830 F.2d 337, 349–50 (D.C. Cir. 1987). Especially where the agency has disclosed and withheld a large number of documents, categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons.

*Id.* For the purposes of the withholdings in this case, all of the videos are the same; they merely recreate the same tests using different kinds of ammunition. The Court of Appeals has declined to require "phony individualization" for records properly withheld pursuant to a FOIA exemption as long as the justifications are sufficient for purposes of resolving FOIA claims. *Keys*, 830 F.2d at 349. Here, the FBI's reason for withholding one video is the same as for all the others, and—to the extent that NPR argues that the FBI should distinguish each responsive video—differentiating among the videos (e.g., by type of ammunition tested) may effectively disclose some of the exempt material. *See Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 760 F. Supp. 2d 4, 14 (D.D.C. 2011) ("The agency . . . is not required to provide so much detail that the exempt material effectively would be disclosed."). The Court declines to force the government to conduct a meaningless exercise in repeating the same reasoning for each and every video it is withholding.

NPR's segregability argument fares no better. FOIA mandates that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Even when parts of a document are protected by a FOIA exemption, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Courts have an "affirmative duty" to consider whether any non-exempt segregable material can be released. *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007). The FBI has asserted that it "is unable to reasonably segregate any of [the videos] for release as these videos consist wholly of ballistics testing, . . . how the FBI investigates the use of particular types of ammunition[,] and the performance capabilities of certain types of ammunition and their ability to wound." 1st Hardy Decl. ¶ 22. In any event, it is unclear how the FBI would segregate or redact a video when the content NPR is seeking *is* the content that poses a risk. *See,*

*e.g.*, *Elec. Privacy Info. Ctr.*, 760 F. Supp. 2d at 14 (finding that non-exempt portions of TSA body scanner images were inextricably intertwined with exempt portions of those images).  The Court thus concludes that, to the extent that parts of the ballistics videos contain non-exempt material, they are inextricably intertwined with parts of the videos properly withheld under Exemptions 7(E) and 7(F) and need not be released.

## IV.    Conclusion

The FBI has demonstrated that reconsideration of the Court's prior Opinion and Order is warranted, and has now provided sufficiently detailed justifications for its withholdings under FOIA Exemptions 7(E) and 7(F).  The Court therefore grants the FBI's Motion for Reconsideration and grants summary judgment for the FBI in full.  An Order will be entered contemporaneously with this Memorandum Opinion.


DATE:  April 28, 2021

CARL J. NICHOLS
United States District Judge

19